**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**CATHERINE BRADFORD**                                                           **PLAINTIFF**

**v.**                              **NO. 3:22-cv-00103-PSH**

**KILOLO KIJAKAZI, Acting Commissioner**                          **DEFENDANT**
**of the Social Security Administration**

**<u>MEMORANDUM OPINION AND ORDER</u>**

In this case, plaintiff Catherine Bradford ("Bradford") challenges the

denial of her applications for disability insurance benefits and

supplemental security income payments. Bradford does so on the grounds

that the Administrative Law Judge ("ALJ") committed legal error, and her

findings are not supported by substantial evidence on the record as a

whole.[1] Bradford maintains that the ALJ failed to comply with a prior

remand order in the following two respects: when the ALJ improperly

---

[1]    The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." <u>See</u> <u>Sloan v. Saul</u>, 933 F.3d 946, 949 (8th Cir. 2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the [ALJ's] conclusion." <u>See</u> <u>Id</u>. "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." <u>See</u> <u>Lucus v. Saul</u>, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting <u>Collins v. Astrue</u>, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted)).

discounted the medical opinions of Connie Ash ("Ash"), an Advanced Practice Registered Nurse ("APN"), and when the ALJ failed to update the medical record and consider ordering a consultative examination by a consulting orthopedist. Bradford also maintains that the ALJ improperly relied upon the medical opinions of Dr. Donita Keown, M.D., ("Keown"). Because the ALJ did not commit legal error, and substantial evidence on the record as a whole supports her findings, her decision is affirmed.

In order to place this case in the proper context, it is necessary to recount the prior administrative and judicial proceedings. The Acting Commissioner of the Social Security Administration ("Commissioner") has summarized those proceedings, and the summary is as follows:

> ... Plaintiff originally filed applications for disability insurance benefits and supplemental security income (SSI) ... on August 29, 2013, alleging a disability onset date of June 22, 2013. ... An ALJ denied her claims on October 27, 2014, and SSA's Appeals Council denied her request for review on January 6, 2016 ... Plaintiff sought judicial review, and on January 17, 2017, the Court remanded the case to the agency for further administrative action ... While Plaintiff's district court case was pending, she filed new applications for disability insurance benefits and SSI on February 3, 2016, and February 5, 2016, respectively ... On February 28, 2017, the Appeals Council remanded Plaintiff's district court case to the ALJ, instructing the ALJ to consolidate the claims files from the remanded case with the files from Plaintiff's subsequently filed 2016 claims ...

During a July 2017 hearing for the consolidated claims, Plaintiff amended her alleged onset date to April 24, 2015, which was the date she turned 50 years old ... An ALJ denied her claims on September 27, 2017, and the Appeals Council declined to assume jurisdiction on May 15, 2019 ... Plaintiff again sought judicial review, and on July 28, 2020, the Court again remanded the case to the agency for further administrative review ... While her second district court case was pending, Plaintiff filed new applications for disability insurance benefits and SSI on July 26, 2019, and August 1, 2019, respectively ... Her protective filing date of those applications was July 24, 2019 ... On September 29, 2020, the Appeals Council remanded the second district court case to a new ALJ; the order instructed the ALJ to consolidate the claims files from the remanded case with the files from Plaintiff's subsequently filed 2019 claims ...

Using Medical-Vocational Rule 202.06 as a guide, the agency determined Plaintiff was disabled as of April 9, 2020, and qualified for SSI ... The agency determined Plaintiff did not qualify for disability insurance benefits because she was last insured on September 30, 2018 (Tr. 1919, 1940, 1954). Plaintiff appealed, and on June 2, 2021, an ALJ found Plaintiff had not been under a disability from April 24, 2015 (amended alleged onset date) through the "date of this decision" ... However, "date of this decision" was a scrivener's error given that Plaintiff was found disabled as of April 9, 2020, which the ALJ acknowledged in her decision ... Thus, the ALJ adjudicated Plaintiff's disability insurance benefits claim through September 30, 2018 (date last insured), and her SSI claim through April 8, 2020 (Tr. 1812-51). On March 10, 2022, the Appeals Council declined to assume jurisdiction ... Therefore, the ALJ's June 2, 2021 decision stands as the final decision of the Commissioner subject to judicial review.

See Docket Entry 17 at CM/ECF 2-3.

Bradford was born on April 24, 1965. She represents that she became disabled on April 24, 2015, i.e., her fiftieth birthday, as a result of, inter alia, chronic obstructive pulmonary disease ("COPD"), lumbar degenerative disc disease, bilateral knee osteoarthritis, osteoarthritis of the left foot, and obesity. She was fifty-three years old on September 30, 2018, i.e., the day she was last insured for disability insurance benefits, and was two weeks shy of her fifty-fifth birthday on April 9, 2020, i.e., the day she was found to be disabled and eligible for supplemental security income payments.[2] The relevant period for purposes of her claim for disability insurance benefits is from April 24, 2015, through September 30, 2018. The relevant period for purposes of her claim for supplemental security income payments is from April 24, 2015, through April 8, 2020.[3]

---

[2]     There is some confusion in this case regarding the date through which the ALJ adjudicated Bradford's claim for disability insurance benefits. Bradford represents that she was last insured on September 30, **2017**. See Docket Entry 15 at CM/ECF 2-3, 4, n.3. The Commissioner represents that Bradford was last insured on September 30, **2018**. The ALJ's findings on the issue are not a model of clarity. The ALJ found that Bradford was last insured on September 30, **2017**. See Transcript at 1815. In the same decision, though, the ALJ found that Bradford had "acquired sufficient quarters of coverage to remain insured through September 30, **2018**," see Transcript at 1816, and met the "insured status requirements of the Social Security Act through September 30, **2018**," see Transcript at 1818 (emphasis added). Although it makes no difference in the outcome in this case, the Court will embrace the September 30, **2018**, date as it appears to be supported by the record. See Transcript at 1919, 1940, 2009.

[3]     Bradford represents that if she is found to be disabled on or before the date she was last insured, "she would receive disability insurance benefits." See Docket Entry 15 at CM/ECF 4, n.3. If she is found to be disabled at some point after that date, she would only receive supplemental security income payments.

The record in this case is over three thousand pages, of which more than eighteen hundred pages are medical records. Bradford did a capable job of summarizing the record, and the Court will not attempt to repeat that effort. Instead, the Court will only briefly note the evidence germane to the issues at bar, i.e., the ALJ's handling of Ash and Keown's medical opinions and the necessity of a consultative examination by a consulting orthopedist.

The record reflects that Bradford sought medical care from Ash on a multitude of occasions between what appears to have been March of 2014 through May of 2018. See Transcript at 596-610 (Exhibit 13F); 616-635 (Exhibit 15F); 1258-1273 (Exhibit 27F); 1496-1665 (Exhibit 35F); 1726-1755 (Exhibit 39F); 1767-1776, 1780-1788 (Exhibit 42F); 1790-1793 (Exhibit 43F). Bradford sought care for a variety of complaints including COPD and pain in her back, hip, leg, and knee. On many occasions, Ash observed that Bradford was unable to bend forward and had difficulty bending her knees because of her pain, which was exacerbated with movement. See, e.g., Transcript at 620. On many other occasions, though, Ash observed that Bradford "move[d] all extremities without difficulty," see, e.g., Transcript at 1727, and was encouraged to lose weight, exercise, and stop smoking, see, e.g., Transcript at 1732.

Ash also ordered testing during the period she saw Bradford. The results of the testing revealed, <u>inter alia</u>, degenerative disc disease in Bradford's back, with bulges at L2-3, L3-4, L4-5; degenerative spondylosis; spinal stenosis; lower facet arthropathy; and degenerative changes in her bilateral knees with bone on bone on the lateral aspects. Testing of her right knee showed degenerative spurring, a meniscus injury, and a patella fracture.

Ash prescribed various medications in an attempt to treat Bradford's symptoms. The medications included Lortab, Ultram, hydrocodone, and naproxen. The medication was of limited benefit and oftentimes caused adverse side effects.

In June of 2014, Ash completed a Medical Source Statement-Physical on behalf of Bradford. <u>See</u> Transcript at 637-638. Ash opined, in part, that Bradford could frequently lift and/or carry less than pounds, stand and/or walk for a total of three hours in an eight-hour workday, and sit for a total of four hours in an eight-hour workday. She would also need to avoid exposure to certain environmental factors. Ash's opinions were based on radiological findings of mild to minor disc bulging and degenerative spondylosis. Ash's assessment was for the period between April of 2014 and June of 2014.

In November of 2016, Ash completed a second Medical Source Statement-Physical on behalf of Bradford. See Transcript at 1757-1759. Ash opined, in part, that Bradford was capable of lifting and carrying ten pounds, standing and walking for about two hours in an eight-hour workday, and sitting for about four hours in an eight-hour workday. Bradford would need longer than normal breaks and the opportunity to shift at will from sitting or standing/walking. She would also need to avoid concentrated exposure to numerous environmental factors. She had no side effects from her medication that would affect her ability to work. On average, her impairments, and the treatment for her impairments, would require her to be absent from work for about three days a month.

As the Commissioner noted in her summary of the prior administrative and judicial proceedings, an ALJ denied Bradford's applications for disability insurance benefits and supplemental security income payments in September of 2017. In doing so, the ALJ gave little weight to Ash's medical opinions. The ALJ found that Ash's opinions were "quite conclusory," relied "quite heavily" on Bradford's subjective report of her symptoms and limitations, and the second Medical Source Statement-Physical was not supported by "any objective medical findings, or reference to testing ..." See Transcript at 689.

Bradford challenged the Commissioner's final decision to deny the applications for disability insurance benefits and supplemental security income payments by filing Bradford v. Saul, No. 3:19-cv-00183-JTR, in the United States District Court for the Eastern District of Arkansas. While Bradford v. Saul was pending, she filed new applications that were later consolidated with her earlier applications.

In March of 2020, Bradford was seen by Keown for a consultative physical examination at the state agency's request. See Transcript at 2755-2760. Bradford's history of present illness was recorded to include the following:

> ... She reports that she stopped working because she is having difficulty with air exchange, diagnosed as chronic obstructive pulmonary disease. She intermittently uses albuterol. She is using Spiriva daily. She was hospitalized with COPD exacerbation and infection during December 2019. She unfortunately continues to smoke heavily as she has since she was a young adult.
>
> ...
>
> With regard to orthopedic complaints, she has stiffness and pain throughout the neck, upper and lower back for years. Discomfort in the hands, writs, elbows, shoulders, hips, knees and ankles, diagnosed with osteoarthritis. In addition to the same, she complains of joint pain, muscle weakness and tenderness throughout ruled out for inflammatory arthritis now described as the fibromyalgia syndrome.

See Transcript at 2757. A physical examination revealed that Bradford was sixty-one inches tall and weighed 190 pounds. The examination also revealed, in part, that in her cervical spine, she had "guarded movement to rotation left and right 70 degrees, flexion and extension 50 degrees." See Transcript at 2759. With respect to her gait and station, she ambulated with a subtle left-side limp. "She did not fully participate to tandem step," she was able to "one-foot stand equally well on left and right," and "[t]oe lift and heel walk exercises" were negative. See Transcript at 2759. X-rays revealed mild osteoarthritis in her right knee, minimal degenerative change of her left knee, a 7 mm "anterior degenerative subluxation at L4-L5," and multi-level degenerative changes in her lumbar spine. See Transcript at 2755. Keown's clinical impressions included chronic low back pain, likely degenerative; "multi-joint arthralgias without clear evidence of loss of function of any joint and limb;" and COPD. See Transcript at 2759. In conclusion, Keown opined the following:

> Based on findings, it is estimated that this claimant would be expected to sit six to eight hours of an eight-hour day, walk or stand four to six hours of an eight-hour day, lift 20 to 25 lbs occasionally, 10 to 12 lbs on a more frequent basis. No assistive device is indicated.

See Transcript at 2760.

In July of 2020, the Commissioner's final decision was reversed and the case remanded. See Bradford v. Saul, No. 3:19-cv-00183-JTR, 2020 WL 4339909 (E.D. Ark. July 28, 2020). The district court found that the ALJ failed to properly assess Bradford's residual functional capacity because Ash's medical opinions were not given sufficient weight. The district court observed that had they been, Bradford would have been found to be capable of performing only sedentary work and, given her age, would have been found to be disabled for purposes of the Social Security Act. The ALJ on remand was directed to "update the medical record and consider[] ordering a consultative examination for Bradford with a consulting orthopedist," then "reconsider all of the medical opinions in arriving at Bradford's [residual functional capacity]." See Id., 2020 WL 4339909, 4.

The case then returned to the administrative level. Another hearing was held, after which the ALJ denied Bradford's applications for disability insurance benefits and supplemental security income payments.

In denying the applications, the ALJ assessed Bradford's residual functional capacity and found that she was capable of performing a reduced range of light work. The ALJ reconsidered all of the medical opinions in making the assessment and found the following with respect to Ash's medical opinions:

> ... the undersigned affords little weight to the opinions of Ms. Ash from June 2014 and November 2016 ... Even considering them with the same factors provided to acceptable medical sources, I do not consider them to be consistent with either her own examinations during this period or in the subsequent period. ...

See Transcript at 1833. The ALJ also discounted Ash's opinions contained in her June of 2014 Medical Source Statement-Physical because the assessment was for the period before the alleged onset date and because it was replaced by the second assessment. With respect to Ash's opinions contained in her November of 2016 Medical Source Statement-Physical, the ALJ acknowledged that Ash had a long-term treating relationship with Bradford. The ALJ nevertheless discounted Ash's opinions contained in the assessment because it was only for the period through 2016, her progress notes after 2015 do not reflect that Bradford was in "acute distress at any point," and Bradford was walking "up to a mile or a mile and a half at one time with no significant limitations reported." See Transcript at 1834. The ALJ also discounted Ash's opinions because they were inconsistent with the other medical evidence, specifically noting that the opinions were inconsistent with Keown's medical opinions and the records from a cardiologist who found that Bradford did best when she was "more active and eating a healthy diet." See Transcript at 1834.

The ALJ also considered other medical opinions in the record. For instance, the ALJ considered, and gave great weight to, the opinions offered by Keown on the heels of her March of 2020 consultative physical examination. The ALJ did so because Keown's assessment was recent, her physical examination showed that Bradford had good strength, and the medical testing revealed that Bradford had generally mild to minimal degenerative changes.

The ALJ did not order a consultative examination for Bradford with a consulting orthopedist. The ALJ declined to do so because Bradford had been found to be disabled for purposes of supplemental security income payments as of April 9, 2020, and any results from such an examination would not be "probative to the claimant's residual functional capacity prior to the established onset date." See Transcript at 1815.

Bradford maintains that the ALJ failed to comply with the Remand Order in Bradford v. Saul, No. 3:19-cv-00183-JTR, in two respects: first, the ALJ improperly discounted Ash's medical opinions, and second, the ALJ failed to update the medical record and consider ordering a consultative examination by an orthopedist. Bradford also maintains that the ALJ improperly relied upon Keown's medical opinions in assessing Bradford's residual functional capacity.

The Court appreciates Bradford's assertion that "[t]he current ALJ's [residual functional capacity] finding is essentially identical to the [residual functional capacity] finding by the previous ALJ," see Docket Entry 15 at CM/ECF 57, which the district court noted was not supported by substantial evidence on the record as a whole. The Court also appreciates Bradford's assertion that "[t]he current ALJ's decision reads like an appellate court review" of the Remand Order, as the decision has a certain tone. The focus of the Court in this instance, though, is not on the tone of the ALJ's decision; instead, the focus is on whether the ALJ committed legal error and whether her findings are supported by substantial evidence on the record as a whole. For the reasons that follow, the Court finds that the ALJ committed no legal error, and her findings are supported by substantial evidence on the record as a whole.

The ALJ's compliance with the Remand Order. The parties interpret the Remand Order in completely different ways, and their interpretations are understandable. Bradford maintains that the ALJ did not comply with the Order when she declined to give Ash's medical opinions proper weight, emphasizing the district court's observations that "[i]f the ALJ had given ... Ash's opinion[s] proper weight, [the ALJ] would have concluded that Bradford could only perform sedentary work" and "[s]uch a finding would

13

have meant that Bradford was 'gridded out' and disabled." See <u>Bradford v. Saul</u>, 2020 WL 4339909, 4. The Commissioner maintains that the ALJ complied with the Order because she was only directed to "update the medical record and consider ordering a consultative examination for Bradford with a consulting orthopedist," then "reconsider all of the medical opinions in arriving at Bradford's [residual functional capacity]." <u>See</u> <u>Id</u>. The Commissioner maintains that the ALJ did as she was directed.

Having reviewed the Remand Order, the Court is persuaded that the ALJ did as she was directed and did not commit legal error. The ALJ updated the medical record, considered ordering a consultative examination for Bradford with a consulting orthopedist, then reconsidered all of the medical opinions in arriving at Bradford's residual functional capacity. The Court understands the district court's observations as to the weight to be given Ash's medical opinions to be just that: observations, not directives. Had the district court meant to require the ALJ to accord Ash's opinions controlling weight, the district court would have said so and likely have simply awarded benefits to Bradford.

<u>The ALJ's handling of Ash's medical opinions</u>. The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See <u>Brown v.</u>

Barnhart, 390 F.3d 535 (8th Cir. 2004). The ALJ must consider all of the relevant evidence in making the assessment. See Grindley v. Kijakazi, 9 F.4th 622 (8th Cir. 2021).

In assessing the claimant's residual functional capacity, the ALJ must weigh the medical opinions in the record and resolve any conflicts among them. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). A treating physician's opinions are entitled to controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. See Michel v. Colvin, 640 Fed.Appx. 585 (8th Cir. 2016).[4] The opinions may be discounted if, for example, they are inconsistent with the physician's own progress notes. See Adair v. Saul, 816 Fed.Appx. 26, 2020 WL 2988696 (8th Cir. June 4, 2020). Whether the ALJ grants a treating physician's opinions substantial or little weight, the ALJ must always give good reasons for the weight given the opinions. See Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).

---

[4]     The regulations governing the consideration of medical opinions were revised for claims filed on or after March 27, 2017. The new regulations eliminated the long-standing "treating physician" rule, a rule providing that the opinions of a treating physician are accorded special deference and normally entitled to great weight. See Despain v. Berryhill, 9265 F.3d 1024 (8th Cir. 2019). Here, the parties agree that Bradford's claims were filed prior to March 27, 2017, and the old regulations apply.

Were the Court weighing Ash's medical opinions in the first instance, the Court would likely give them greater weight than the ALJ did. The Court, though, is not weighing them in the first instance. The ALJ was, and she gave good reasons for discounting the opinions.

First, Ash is an APRN. She is therefore not an "acceptable medical source" under the old regulations but is instead an "other medical source." Although Ash is capable of giving an opinion as to Bradford's limitations, and Ash's opinions must be considered, her opinions are not accorded the same weight as a treating physician's opinions.

Second, the ALJ could and did find that even considering Ash's medical opinions with "the same factors provided to acceptable medical sources," see Transcript at 1833, Ash's opinions are entitled to little weight because they are inconsistent with her own progress notes. For example, Ash observed on numerous occasions that Bradford was unable to bend forward and had difficulty bending her knees because of her pain, which was exacerbated with movement. See, e.g., Transcript at 620. On many other occasions, though, Ash observed that Bradford "move[d] all extremities without difficulty," see, e.g., Transcript at 1727, and was encouraged to lose weight, exercise, and stop smoking, see, e.g., Transcript at 1732.

Third, the ALJ could and did find that Ash's medical opinions are entitled to little weight because they are inconsistent with the testing she ordered. For instance, testing of Bradford's back revealed, in part, degenerative disc disease with bulges at L2-3, L3-4, L4-5. In Ash's June of 2014 Medical Source Statement-Physical, though, she characterized the disc bulging as mild to minor. The testing also revealed degenerative spondylosis, spinal stenosis, lower facet arthropathy, and degenerative changes in Bradford's bilateral knees with bone on bone on the lateral aspects. A reasonable interpretation of the testing is that it is inconsistent with disabling impairments.

Fourth, the ALJ could and did find that Ash's medical opinions are entitled to little weight because they are inconsistent with the other evidence in the record. For instance, Keown performed testing, and the results revealed mild osteoarthritis in Bradford's right knee, minimal degenerative change of her left knee, a 7 mm "anterior degenerative subluxation at L4-L5," and multi-level degenerative changes in her lumbar spine. See Transcript at 2755. Keown opined that Bradford would be expected to be able to sit for six to eight hours in an eight-hour day, walk or stand for four to six hours in an eight-hour day, occasionally lift twenty to twenty-five pounds, and frequently lift ten to twelve pounds.

Moreover, in November of 2017, Bradford saw a cardiologist, Richard Hester, M.D., ("Hester) for a follow-up examination. <u>See</u> Transcript at 2385-2389. Bradford reported, in part, that she was walking at least one and one-half miles every day. Hester observed that Bradford was "doing very well from [a] cardiac standpoint with no shortness of breath or chest pain." <u>See</u> Transcript at 2388.

With specific regard to Ash's medical opinions contained in her June of 2014 Medical Source Statement, the ALJ could and did find that the opinions are entitled to little weight. The assessment was for a period before the alleged onset date and was based on unremarkable findings, <u>i.e.</u>, "radiological findings of mild to minor disc bulging and degenerative spondylosis." <u>See</u> Transcript at 638.

With specific regard to Ash's medical opinions contained in her November of 2016 Medical Source Statement, the ALJ could and did find that the opinions are entitled to little weight. Although the assessment was for part of the period after the alleged onset date, <u>i.e.</u>, from March of 2014 to November of 2016, Ash failed to offer any objective medical findings to support the limitations she identified. Moreover, the ALJ could and did find that the assessment is inconsistent with Ash's own progress notes and the other evidence in the record.

The ALJ's handling of Keown's medical opinions. The medical opinions of a consulting physician are not accorded the same weight as the opinions of a treating physician. The opinions of a consulting physician are typically accorded limited weight. See Anderson v. Heckler, 738 F.2d 959 (8th Cir. 1984).

Here, the ALJ accorded great weight to Keown's medical opinions. The ALJ did not err in so weighing Keown's opinions for the reasons that follow.

First, Keown performed her consultative examination of Bradford in March of 2020. The ALJ could and did find that Keown's findings and observations are the most recent assessment of the work-related limitations caused by Bradford's impairments.

Second, Keown found, inter alia, that Bradford had good strength and could adequately ambulate, albeit with a subtle left-side limp. Keown's findings and observations are consistent with the medical testing, which showed that Bradford had generally mild to minimal degenerative changes.

Third, Keown's findings and observations are not inconsistent with the other evidence in the record. For example, Bradford was noted to be walking a mile, even a mile and a half, at one time with no significant limitations. See Transcript at 2388.

It is for the ALJ in the first instance to weigh the medical opinions in the record. The ALJ gave good reasons for weighing Keown's opinions as the ALJ did.

A consultative examination by an consulting orthopedist. Bradford maintains that the record was not fully developed. Bradford so maintains because the ALJ failed to order a consultative examination by a consulting orthopedist.

The ALJ has a duty to fully develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). There is no bright line test for determining if the ALJ did so. See Id. It simply involves examining whether the record contains sufficient information for the ALJ to have made an informed decision. See Pratt v. Asture, 372 Fed.Appx. 681 (8th Cir. 2010).

Here, there was sufficient information for the ALJ to have made an informed decision. Bradford's assertion that a consultative examination should have been ordered is unpersuasive for two reasons.

First, the Remand Order did not require the ALJ to order a consultative examination by an consulting orthopedist. The Order merely provided that the ALJ should "consider ordering a consultative examination for Bradford with a consulting orthopedist." See Bradford v. Saul, 2020 WL 4339909, 4.

Second, the ALJ did, in fact, consider ordering a consultative examination by a consulting orthopedist. The ALJ declined to order the examination, though, because Bradford had been found to be disabled for purposes of supplemental security income payments as of April 9, 2020, and any results from such an examination would not be "probative to the claimant's residual functional capacity prior to the established onset date." See Transcript at 1815. The reason is a good reason for the ALJ to have declined to order the examination. The examination would have likely occurred in 2020, or more than two years after Bradford was found to be disabled, and the orthopedist would have been asked to provide an opinion as to Bradford's work-related limitations for the period two years earlier.

The governing standard in this case allows for the possibility of drawing two inconsistent conclusion. See Culbertson v. Shalala, 30 F.3d 934 (8th Cir. 1994). The evidence relevant to the work-related limitations caused by Bradford's impairments is inconsistent and is capable of more than one acceptable characterization. The ALJ crafted an assessment of Bradford's residual functional capacity that limited her to a reduced range of light work, and Bradford has not shown how the ALJ erred in arriving at that assessment.

For these reasons, the Court finds that the ALJ committed no legal error, and her findings are supported by substantial evidence on the record as a whole. Bradford's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 13th day of July, 2023.

_____
UNITED STATES MAGISTRATE JUDGE